**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| **WOLVERINE BARCODE IP LLC,**<br>**Plaintiff,** | **Civil Action No. 7:25-cv-00108-O** |
| **v.** | |
| **7-ELEVEN, INC.,**<br>**Defendant** | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

## I. INTRODUCTION

Defendant's Opening Markman Brief (Dkt. 50) confirms that this is not a case requiring broad judicial rewriting of ordinary claim language. Defendant argues that Plaintiff relies on attorney argument and that numerous terms are indefinite, not enabled, or must be narrowed. Dkt. 50 at 1, 8-30. But Defendant's attacks depend on expert gloss and litigation-driven limitations, not lexicography or disclaimer. The intrinsic record supplies the answer: claim 1 recites a point-of-sale method in which a User ID Barcode is scanned at a vendor cash register, detected by a vendor server, and used by a User Vendor Management Server to approve purchases. '689 patent, claim 1, 17:30-18:24; *id.*, Figs. 1(b), 2(b), 7(a).

Plaintiff's opening brief correctly sought plain and ordinary meaning for nearly all disputed terms, and the parties already agreed that terms not specifically disputed receive their plain and ordinary meaning. Dkt. 49 at 3-15; Dkt. 48 at 1. Defendant identifies no clear statement limiting the claims to a dedicated, isolated, non-networked architecture, no basis to convert 'barcode format' into an image-file requirement, and no clear-and-convincing evidence that ordinary phrases such as 'vendor server,' 'User ID Barcode,' or 'ID Barcode' fail to inform a skilled artisan of the claim scope. The Court should adopt Plaintiff's constructions.

## II. DEFENDANT CANNOT USE MARKMAN TO IMPORT VALIDITY AND NON-INFRINGEMENT LIMITATIONS

Defendant argues non-enablement and indefiniteness, and relies on expert testimony in support. Dkt. 50 at 1, 3-4, 8-17, 23-27. However, none of Defendant's arguments do not justify rewriting the claims. Claim terms are given their ordinary meaning in light of the intrinsic record; extrinsic evidence is subordinate and cannot contradict the patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-19 (Fed. Cir. 2005) (en banc). Nor may Defendant import preferred embodiments absent lexicography or clear disavowal. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d

1362, 1365-66 (Fed. Cir. 2012).

The patent-in-suit explains the invention in ordinary point-of-sale terms. It states that the User ID Barcode may be generated from a cell-phone number, credit-card number, driver's-license number, or social-security number, with a special character prefix or suffix so the vendor server can distinguish it from product barcodes. '689 patent at 2:39-65, 3:5-20, 5:31-6:7. It states that the cashier uses the barcode scanner available at the cash register to capture the User ID Barcode. *Id.* at 2:47-51, 5:59-65, 9:63-10:18. It describes the UVM as managing users and vendors, maintaining accounts, processing transactions, and returning approval. *Id.* at 3:31-50, 7:21-53, 10:13-31. Those disclosures defeat Defendant's effort to manufacture ambiguity.

## III. RESPONSE TO DEFENDANT'S TERM-BY-TERM ARGUMENTS

### A. Preamble and "offline electronic commerce transactions"

The parties agree the preamble is limiting. Dkt. 48 at 1; Dkt. 50 at 8. Defendant nevertheless asserts that the preamble lacks enablement and argues that 'offline electronic commerce transactions' means transactions conducted 'without use of third-party networks or services.' Dkt. 50 at 8-13; Dkt. 48, Ex. A at 2-3. However, Plaintiff's opening brief correctly explained that the preamble is enabled and that 'offline electronic commerce transactions' needs no construction, or alternatively means 'physical presentation of information pertaining to the user account.' Dkt. 49 at 3-6; Dkt. 48-1 at 3.

Defendant's 'no third-party networks or services' language is not in the claim. See Dkt. 50 at 11-12. The specification distinguishes the claimed point-of-sale presentation and UVM processing from conventional credit-card networks, but it does not prohibit communications networks, funding sources, or external databases. To the contrary, Figure 3 expressly shows Internet, dedicated-line, and wireless-phone connections to the UVM; Figures 5(a)-(b) describe

credit-card or bank-account information and payment-method selection; and the text contemplates obtaining user information from cell-phone or credit-card company databases. '689 patent, Fig. 3; *id.* at 3:31-50, 4:29-42, 8:41-54. Defendant's negative limitation would thus exclude disclosed embodiments and should be rejected.

## B. "providing a personal code to a person for their use to purchase goods"

Defendant argues this phrase lacks enablement or should be limited to a number associated with the user, such as a driver's-license, credit-card, or social-security number, 'independent of the Accused Instrumentality.' Dkt. 50 at 13-16; Dkt. 48-1 at 4. Plaintiff proposes plain and ordinary meaning. Dkt. 49 at 6; Dkt. 48-1 at 4.

The phrase is not indefinite or non-enabled. The patent identifies examples of personal codes, including cell-phone numbers, credit-card numbers, driver's-license numbers, and social-security numbers. '689 patent at 2:39-45, 3:5-20, 6:29-37. But claim 1 does not say the personal code must be 'independent of the Accused Instrumentality,' and the specification contains no such disclaimer. Defendant's construction would improperly turn examples into limitations. Plaintiff's plain-meaning construction is correct.

## C. Repetition step

Defendant argues the final repetition step is indefinite because claim 1 labels two different steps '(i)' and recites repeating steps '(f) through (i).' Dkt. 50 at 16-17; Dkt. 48-1 at 5. Plaintiff proposes plain and ordinary meaning. Dkt. 49 at 6-7; Dkt. 48-1 at 5.

The drafting error is apparent and harmless. Claim 1 recites a purchase-transaction sequence in steps (f), (g), (h), and the first (i), then states that the sequence is repeated for subsequent transactions using the same User ID Barcode. '689 patent, claim 1(f)-(i), 17:57-18:24. The specification repeatedly describes the same repeatable checkout process, including subsequent

account-balance updates after purchases. *Id.*, Figs. 6(a)-6(b), 7(a)-7(c); *id.* at 9:55-10:31, 11:3-28.

A skilled artisan would understand the scope with reasonable certainty.

**D. "vendor server," "User Vendor Management Server," and vendor-server purchase phrases**

Defendant seeks to narrow 'vendor server' to a server 'owned, possessed, or controlled by the vendor' that provides product-description and price information, stores transaction data, and is 'separate from' the cash register, UVM, and payment systems. Dkt. 50 at 17-19; Dkt. 48-1 at 6-7. Defendant similarly proposes that the UVM is 'not networked with other payment systems besides one or more vendor servers or one or more UVMs,' and that purchases must occur at vendors each having their 'own' non-shared vendor server. Dkt. 50 at 20-22; Dkt. 48-1 at 8-9. Plaintiff proposes plain and ordinary meaning for these terms. Dkt. 49 at 7-10; Dkt. 48-1 at 6-9.

Claim 1 defines the servers by function, not ownership or exclusivity. The vendor server receives product barcodes and the User ID Barcode, detects the User ID Barcode, and forwards the ID Barcode and purchase price to the UVM. '689 patent, claim 1(f)-(g), 17:57-18:17. The UVM stores the personal code, establishes the User Account, compares purchase price with available funds or credit limit, and sends approval. *Id.*, claim 1(c)-(i), 17:45-18:24. The specification matches those functions, describing the vendor server detecting the User ID Barcode and the UVM processing user/vendor transactions. *Id.*, Figs. 1(b), 2(b); *id.* at 3:31-50, 7:21-53, 9:55-10:31.

Nothing in those passages requires vendor ownership, physical separation from the cash register, a dedicated non-shared server, or a UVM isolated from all other payment systems. The patent's figures and text expressly contemplate networks, bridges among UVMs, and credit-card or bank-account funding. *Id.*, Figs. 3, 5(a)-5(b), 8-9; *id.* at 4:29-42, 8:41-54, 16:6-65. Defendant's constructions add architecture and non-infringement limitations that the claim language does not

5

contain.

**E. "User ID Barcode," "ID Barcode," "barcode format," and distinguishing language**

Defendant argues that 'User ID Barcode' must require that the same barcode be usable for multiple transactions and represent the user's cell-phone or credit-card number, and that 'ID Barcode' is indefinite. Dkt. 50 at 19-20, 25-27; Dkt. 48-1 at 7-8, 12. Defendant also argues that 'barcode format' means an 'image format that can be read by a barcode scanner.' Dkt. 50 at 27-28; Dkt. 48-1 at 14. Plaintiff proposes plain and ordinary meaning. Dkt. 49 at 8, 11, 14; Dkt. 48-1 at 7-8, 12, 14.

Claim 1 itself explains 'User ID Barcode': it is formed by converting the personal code into barcode format, corresponds to the personal code, and includes at least one special character to distinguish it from a product barcode. '689 patent, claim 1(b), 17:36-44. The specification is consistent: the barcode is an optical machine-readable representation of data, derived from a conventional barcode, and includes a special character or characters to identify it as a personal ID code and distinguish it from product/goods barcodes. *Id.* at 5:31-49. The patent gives examples using cell-phone and credit-card numbers, but also states that other identifiers, including driver's-license and social-security numbers, may be used. *Id.* at 2:39-45, 3:5-20, 6:29-37. Defendant's construction improperly narrows those disclosures.

The 'ID Barcode' point is even clearer. Step (g) recites 'detecting the User ID Barcode at the vendor server and forwarding the ID Barcode and purchase price' to the UVM. '689 patent, claim 1(g), 18:12-17. In context, 'the ID Barcode' is the just-recited User ID Barcode. The specification describes the same sequence: the vendor server detects the special character and sends the User ID Barcode with transaction data to the UVM. *Id.* at 10:13-31. That is reasonably certain.

6

Defendant's 'barcode format' construction is likewise wrong. *See* Dkt. 50 at 27. The patent says barcode data is optically read by scanners, but claim 1 does not require server-to-server transmissions to be image files. *Id.* at 5:31-43. Step (b) concerns converting the personal code into barcode format to form the User ID Barcode; after scanning, the system may forward the identifying information electronically. *Id.*, claim 1(b), (f)-(g), 17:36-18:17. Defendant's image-format requirement confuses point-of-sale optical presentation with later transaction data processing. *See id.*

## F. Scanner terms, forwarding, transmitting, scanning, and storing phrases

Defendant argues that 'product barcode scanner' and 'vendor barcode scanner' are indefinite because the specification often uses the simpler phrase 'barcode scanner.' Dkt. 50 at 23-25; Dkt. 48-1 at 10-11. Defendant also seeks to impose an image-format limitation on the forwarding phrase and a 'capturing' limitation on the transmitting phrase. Dkt. 50 at 28-30; JCC, Ex. A at 13, 16. In the Joint Claim Construction chart (Dkt. 48-1), Defendant also proposed 'no doctrine of equivalence' for the distinguishing and scanning phrases. Dkt. 48-1 at 14-16. Plaintiff proposes plain and ordinary meaning. Dkt. 49 at 10-15; Dkt. 48-1 at 10-16.

The scanner terms are readily understood in context. The preamble recites a vendor barcode scanner and vendor cash register; step (f) recites scanning product barcodes and the User ID Barcode with a product barcode scanner at the vendor cash register. '689 patent, claim 1 preamble and 1(f), 17:30-32, 17:57-18:6. The specification repeatedly identifies the scanner at the cash register as the device that captures product barcodes and the User ID Barcode. *Id.*, Figs. 1(b), 7(a); *id.* at 2:47-51, 5:59-65, 9:63-10:18, 11:40-42. The modifiers 'vendor' and 'product' describe context and use, not uncertainty.

The forwarding and transmitting phrases also need no special construction. Once the

barcode scanner captures and the vendor server detects the User ID Barcode, the vendor server forwards the ID Barcode and purchase price to the UVM and transmits transaction data as claim 1 recites. *Id.*, claim 1(f)-(h), 17:57-18:20; *id.* at 10:13-31, 11:3-28. Defendant's proposals add unclaimed image-file and 'capturing' requirements. *See* Dkt. 50 at 28-29. And 'no doctrine of equivalence' is not claim construction; it is an infringement or estoppel argument for another stage.

Finally, 'storing said personal code in said User ID Barcode format' is clear. Defendant proposed that it means storing an image of the User ID Barcode. Dkt. 48-1 at 16-17; Dkt. 50 at 30. But claim 1 uses storage language for the person and the UVM, while the specification describes downloading the User ID Barcode to a phone, printing it on a credit card or label, and maintaining user account information at the UVM. '689 patent, claim 1(c), 17:45-50; *id.* at 2:45-65, 5:49-65, 7:21-53. Nothing limits storage to an image file.

## IV. PLAINTIFF'S ORIGINAL POSITIONS REMAIN CORRECT

Plaintiff's original brief correctly tied the constructions to the claim language and intrinsic record. Dkt. 49 at 3-15. Defendant's contrary proposals generally do one of three things: (1) convert disclosed examples into mandatory limitations, such as limiting the personal code and User ID Barcode to particular numbers; (2) add architecture restrictions, such as ownership, non-sharing, physical separation, or payment-system isolation; or (3) repackage validity and infringement issues as claim construction, such as enablement challenges, indefiniteness arguments resolved by context, or 'no doctrine of equivalence' proposals. Dkt. 50 at 8-30; Dkt. 48 Ex. A at 2-17.

The Court should reject each category. Claim 1 tells the public what is required. The specification confirms the ordinary meanings by describing conventional scanners, cash registers, servers, barcodes, accounts, and transaction messages. '689 patent at 5:31-6:7, 7:21-53, 9:55-10:31. Defendant's narrowing constructions would not clarify the claims; they would rewrite them.

## V. CONCLUSION

For the reasons stated in Plaintiff's opening brief and above, the Court should adopt Plaintiff's proposed constructions: the preamble is limiting and enabled; 'offline electronic commerce transactions' requires no construction or, alternatively, means 'physical presentation of information pertaining to the user account'; and the remaining disputed terms should receive their plain and ordinary meanings.

Dated: May 18, 2026

Respectfully submitted,

*/s/ William P. Ramey, III*
William P. Ramey, III
Ramey LLP
Texas State Bar No. 24027643
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
wramey@rameyfirm.com

***Attorneys for Wolverine Barcode IP, LLC***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of May 18, 2026, with a copy of the foregoing via ECF.

/s/ *William P. Ramey, III*
William P. Ramey, III

10