**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| WOLVERINE BARCODE IP LLC, | |
| Plaintiff, | |
| v. | Civil Action No.: 7:25-cv-00108-O |
| 7-ELEVEN, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

**DEFENDANT'S RESPONSIVE *MARKMAN* BRIEF**

**TABLE OF CONTENTS**

I.       **Introduction**........................................................................................................ 1

    A.    "A method for conducting offline electronic commerce transactions having a vendor barcode scanner and a vendor cash register" ............................................................... 1

    B.    "offline electronic commerce transactions" ................................................................ 3

    C.    "providing a personal code to a person for their use to purchase goods" ..................... 4

    D.    "(i) repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode" ...................................................................................................... 5

    E.    "vendor server" ......................................................................................................... 7

    F.    "User ID Barcode" .................................................................................................... 7

    G.    "user vendor management server" ............................................................................. 8

    H.    "Product barcode scanner" and "vendor barcode scanner" ......................................... 9

    I.    "ID Barcode" ........................................................................................................... 10

    J.    "barcode format" ...................................................................................................... 11

    K.    "forwarding the ID Barcode and purchase price to said User Vendor Management Server" .................................................................................................................... 12

    L.    "transmitting both product barcodes and User ID Barcode to said vendor server" .... 13

    M.    "storing said personal code in said User ID Barcode format" .................................... 13

II.      **Conclusion** ...................................................................................................... **13**

**TABLE OF AUTHORITIES**

**Cases**

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*
813 F. App'x 522 (Fed. Cir. 2020) ...................................................................................... 10

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*
435 F.3d 1366 (Fed. Cir. 2006)......................................................................................... 5, 6

*Joy MM Delaware, Inc. v. Cincinnati Mine Mach., Co.*
497 F. App'x 970 (Fed. Cir. 2012) ...................................................................................... 10

*Magnolia Med. Techs., Inc. v. Kurin, Inc.*
169 F.4th 1094 (Fed. Cir. 2026) ......................................................................................... 10

*Nautilus, Inc. v. Biosig Instruments, Inc.*
572 U.S. 898 (2014).......................................................................................................... 5, 10

*Sw. Software, Inc. v. Harlequin Inc.*
226 F.3d 1280 (Fed. Cir. 2000)............................................................................................ 6

*Trusted Knight Corp. v. Int'l Bus. Machines Corp.*
681 F. App'x 898 (Fed. Cir. 2017) ....................................................................................... 6

## I.      Introduction

The purported invention disclosed by the '689 Patent relates to a specific implementation of conducting electronic commerce transactions. Yet, Plaintiff's Opening Claim Construction Brief (Dkt. 49) advances arguments that disregard the detailed and technical nature of how such transactions are performed, instead relying on generalized descriptions of the claims and the specification.[1] Plaintiff also employs circular reasoning – asserting, in effect, that the claim language is clear because it is written in plain English – which is inconsistent with established principles of claim construction. Plaintiff further urges the Court to adopt a "plain and ordinary meaning" for nearly every disputed term, an approach that would  provide little to no guidance to the jury regarding the scope of the claims. By contrast, Defendant's proposed constructions are firmly grounded in the claim language, supported by specific citations to the specification, and reinforced by unrebutted testimony from a POSITA.

Additionally, Plaintiff's attorney argument cannot overcome the unrebutted testimony of Henry Dreifus regarding indefiniteness and lack of enablement. Plaintiff's positions are incorrect, unsupported by the intrinsic record, and devoid of any evidence addressing how a POSITA would interpret the claims. Accordingly, Defendant respectfully requests that the Court find that the claims of the Asserted Patent are indefinite and/or not enabled, and adopt Defendant's proposed constructions.

### A.  "A method for conducting offline electronic commerce transactions having a vendor barcode scanner and a vendor cash register"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, limiting. | Lacks enablement. Alternatively, preamble is limiting. |

---

[1] Plaintiff's Brief does not appear to include any specific citations to the disclosure of the specification by column and line number. Instead, it relies on high level descriptions and summaries of the disclosure of the Asserted Patent.

The parties dispute whether a POSITA would understand this term to be enabled. Instead of providing evidence that addresses the perspective of a POSITA, Plaintiff completely ignores the declaration of Defendant's expert, Mr. Dreifus. Dkt. 49 at 4. Plaintiff does not offer any rebuttal evidence or explain why undue experimentation would not be required. This alone warrants adopting Defendant's position that the preamble is not enabled.

Plaintiff's Brief does not actually explain the meaning of an "offline transaction" or why that term would be understood by a POSITA without undue experimentation. Dkt. 49 at 4. Rather than explaining how the term would be understood, Plaintiff makes two confusing arguments. First, Plaintiff appears to argue that the term is enabled by distinguishing between two types of transactions – one type that is "offline" and one type that is "web-based." Dkt. 49 at 4 ("[t]he specification further explains why the claimed method is 'offline' in context: the user physically presents an identifier at a vendor site, where the vendor's scanner and cash register participate in the transaction. This is not a purely web-based shopping cart.") But simply distinguishing between two types of transactions does not explain how a POSITA would understand the term "offline transaction."

Second, Plaintiff's attorney argument further underscores the ambiguous nature of this term and does little to explain the "offline" environment discussed and claimed by the Asserted Patent. Plaintiff's argument amounts to equating "offline" with being physically present or physically presenting some item at a vendor, but Plaintiff fails to support this position with any citations to the Asserted Patent or with evidence of any kind.

According to Plaintiff's logic, an "offline transaction" still includes the online transmittal of information using a network. *Id.* ("Nor does 'offline' mean that no network, server, or electronic transmission can be used; claim 1 itself requires transmitting information to a vendor server and

forwarding information to a User Vendor Management Server."). This attorney argument strains credulity, is contrary to the disclosure of the specification and the claims themselves, and lacks any evidentiary support from a POSITA. Plaintiff's argument also raises the question of when electronic transmission ceases to be "offline" and becomes "web-based" or otherwise qualifies as an "online" transaction.

On the contrary, Defendant has provided unrebutted evidence that: (1) the Asserted Patent arbitrarily and confusingly defines what is offline or online, making a plain and ordinary meaning construction inappropriate; and (2) a POSITA would understand offline to mean a system unlike that described by the Asserted Patent and thus the claims are not enabled. Defendant respectfully requests that the Court adopt its position.

### B. "offline electronic commerce transactions"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, or in the alternative, "physical presentation of information pertaining to the user account" | "a transaction conducted without use of third-party networks or services" |

Plaintiff mischaracterizes Defendant's position as arguing that no networks or services are involved in the offline electronic commerce transactions. *See* Dkt. 49 at 5. This is incorrect. Instead, Defendant seeks to clarify that the disclosure of the Asserted Patent requires that the alleged invention operates on its own, without connection to traditional third-party financial processors, such as credit card companies, to complete transactions. *See* APPX022, '689 Patent, 7:60-63 ("Because the cost of the purchases are paid for using the user's UVM account of the present system and method without having a third party involved, the checkout process is very fast and allows the vendor to reduce overhead cost.").

The vendor server and UVM servers may still be connected, but they must be unique components of the purported invention. If they were not, a plain and ordinary meaning construction

could encompass any server, payment system, or conventional network that existed prior to the Asserted Patent. Dkt. 49 at 1 ("The specification repeatedly describes conventional components, including cash registers, barcode scanners, vendor servers, and user accounts, and explains how they interact."). But the Asserted Patent clearly aims to differentiate itself from pre-existing conventional networks, servers, and transaction processing. In fact, the Asserted Patent even describes the invention as being an alternative to traditional credit cards, thus suggesting no involvement of outside parties. APPX024, '689 Patent at 11:25-28 ("Note that neither the CCPC nor any credit card company is involved in the purchasing transaction processing. The UVM is in fact the CCPC and a credit card company of its own in this case."). What Plaintiff terms a "negative limitation not found in the claim" is in fact found throughout the Asserted Patent and heavily relied upon to distinguish from the prior art.

Finally, Plaintiff's construction is not based on anything disclosed in the Asserted Patent or its file history. Nowhere does the Asserted Patent discuss that offline transactions equate to physical presentation of information. Plaintiff's lack of citations to the Asserted Patent or prosecution history is telling and the Court should reject Plaintiff's proposed construction.

**C. "providing a personal code to a person for their use to purchase goods"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Lacks enablement. Alternatively, "a number associated with the user (such as driver's license, credit card number, or social security number) independent of the Accused Instrumentality" |

Plaintiff undercuts its own position when it provides examples of a personal code because it essentially admits that the specification describes only "number[s] such as a cell phone number or credit card." Dkt. 49 at 6. This is because the Asserted Patent only discusses these types of identifiers.

4

Regarding the phrase "independent of the Accused Instrumentality," Defendant is willing to adjust this to state "independent of the claimed invention." The argument remains that the Accused Patent offers no explanation or examples of how a personal code is provided. Plaintiff's plain and ordinary meaning construction would allow it to point to any number associated with a user, while the Asserted Patent is silent on how a personal identifier is actually provided to a user.

Plaintiff again provides no evidence to support its contention that this term is enabled. Plaintiff's Brief neither mentions nor rebuts the declaration of Henry Dreifus. Dkt. 49 at 6. Provisioning of personal identifiers in payment systems is a complicated technical issue. The Plaintiff asks the Court to gloss over this point by finding the term at issue is enabled and requires no construction based only on attorney argument. This position is unsupported by any evidence or citation to the Asserted Patent.

### D. "(i) repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite |

Plaintiff states that "[t]he final step simply requires that this transaction flow be repeated for later purchases using the same User ID Barcode." Dkt. 49 at 7. But this is an assumption not supported by the law or the Asserted Patent. Plaintiff's reliance on *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366 (Fed. Cir. 2006) is misplaced. Dkt. 49 at 7. First, this case was decided before the Supreme Court's decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014) which redefined the indefiniteness standard. Second, *Energizer* dealt with antecedent basis, which the Federal Circuit found could be implied. The current situation does not involve antecedent basis. Third, the *Energizer* court stated that "neither the Commission nor the courts can

rewrite claims to correct material errors…" *Energizer*, 435 F.3d at 1370. Yet, that is exactly what Plaintiff asks the Court to do.

The fact remains that the repeated "i" steps create confusion as to the scope of claim 1 and Plaintiff failed to correct this even though it had the chance before filing this lawsuit. The claim was drafted by the patentee, and was not an error of the Patent Office. *See* APPX222-23 (patentee adding new claim 26, which became claim 1, containing two "i" steps). Plaintiff had the opportunity to make a correction under 35 U.S.C. § 254 via a certificate of correction but chose not to. Instead, Plaintiff chose to file a lawsuit asserting an indefinite claim. A certificate of correction now under § 254 is thus void as to this proceeding. *See Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1295 (Fed. Cir. 2000) ("By necessary implication, for causes arising before its issuance, the certificate of correction is not effective.").

Further, it is inappropriate for the Court to correct this claim. Plaintiff argues that the second "i" should become a "j." Dkt. 49 at 7. "A district court can only correct a patent, however, if: (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Trusted Knight Corp. v. Int'l Bus. Machines Corp.*, 681 F. App'x 898, 903 (Fed. Cir. 2017). Here, there are multiple ways to potentially interpret (or correct) claim 1. Of course, Plaintiff proposes replacing the second "i" step with "j." However, the second "i" step could also be removed and merged with the first one. Or the first "i" step could be merged with the "h" step. Either of these could potentially resolve the purported typographical error. Multiple feasible corrections suggest that the Court cannot make a correction to claim 1. *Trusted Knight*, 681 F. App'x at 904 (finding that multiple possible corrections appeared to be feasible and thus the claim at issue could not be corrected and was indefinite).

The Court should decline to correct the typographical error introduced by the Plaintiff and find that claim 1 is indefinite.

### E.  "vendor server"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "a server that contains product information and no information on users" |

Once again Plaintiff offers no basis or citations to support its proposed construction. While facially addressing the disavowal issue, Plaintiff does not explain why arguments made during prosecution have no effect on the scope of this term. Dkt. 49 at 7-8. This contrasts with Defendant's clear explanation of why Plaintiff's statements during prosecution to overcome the Choe reference and lexicography in the patent prosecution history result in disavowal. *See* Dkt. 50 at 17-18. Plaintiff does not address either of these points with any meaningful argument or case law and thus Defendant's construction should be adopted.

### F.  "User ID Barcode"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "a barcode unique to each user, created and assigned to each user only once" |

Plaintiff's Brief discusses examples of types of information that can be used to generate a "User ID Barcode." Dkt. 49 at 8. But these limited examples do not support its position that the User ID Barcode can have unlimited scope. First, a user changing his or her account credentials does not mean that a single barcode is not otherwise used by the user to purchase goods. If a security breach or other exigent circumstance arises, a new barcode can be provided to the user, but that barcode then becomes the User ID Barcode. That barcode is unique to each user, created and assigned to each user only once, consistent with Defendant's construction.

Second, Plaintiff argues that "[the Asserted Patent] also describes time-variant and user-variant encryption." Dkt. 49 at 9. This argument conflates *encryption* of a barcode with *assignment* of a unique barcode. Defendant's construction is not undermined or contradicted by this disclosure. A single barcode associated with a user can still be *encrypted* in a time-variant or user-variant manner without affecting the *assignment* of the barcode itself to that user.

Once a User ID Barcode is assigned to a user, the patentee clearly described a single User ID Barcode being used for all purchases. *See* Appx227, Reply to Office Action of September 9, 2015 at 7 ("Applicant's system is a single channel communication system for all data at all vendor locations/registers using the same single User ID Barcode at all POS locations.").

Plaintiff's argument should thus be rejected.

### G. "user vendor management server"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | A UVM is not networked with other payment systems besides one or more vendor servers or one or more UVMs |

Plaintiff contends that the specification discloses multiple operating "modes" that undermine Defendant's proposed construction. However, a patent can disclose multiple embodiments but claim only one. That is what occurred with claim 1 of the Asserted Patent. Step "e" of claim 1 states "depositing funds in said User Account to establish a credit limit." APPX027, '689 Patent, claim 1. This step indicates that claim 1 is directed to what the Asserted Patent terms "prepaid mode." The Asserted Patent describes this mode as allowing the user to fund their account on the UVM server, but during purchase, only the UVM server is accessed to make payment:

> The present method and system introduces a server called User Vendor Management Server (UVM) for the management of users and vendors. The UVM processes all purchasing transactions between the user and the vendor. The UVM may be operated in a prepaid mode or post pay mode. For the prepaid mode, the user registers with the UVM and creates an account. The user deposits funds as

8

required by the operator of the UVM, using a credit card or the bank account. This amount deposited is called the Top Off amount. *The payment for the purchase transaction is made from the fund available within the user's UVM account*. When the fund available in the user's UVM account is not enough to cover the cost of the purchase, the method and apparatus of the present invention provides an easy and fast method for the user to add funds instantly to the user's UVM account by using the credit card or the bank account that the user provided at the time of registration. The amount to be added is the shortage of the cost of the purchase plus the Top Off amount such that the available fund in the user's UVM account after the completion of the purchase is restored to the Top Off amount.

APPX022, '689 Patent, 7:21-40 (emphasis added).

Defendant's construction captures the idea that the user vendor management server operates in a closed environment, which is the embodiment of the patent that is recited by claim 1. As noted above and in Defendant's opening brief, the UVM server operates as a stand-alone alternative to traditional payment methods when a user makes a purchase using the method of the Asserted Patent.

### H.  "Product barcode scanner" and "vendor barcode scanner"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Plaintiff once again makes no citation to the Asserted Patent and provides no evidence to support its arguments. The fact remains that two different barcode scanners are claimed, whereas only one is discussed in the Asserted Patent. It is wholly unclear what these barcode scanners are, how they function, or what the claims are referring to. Plaintiff admits that the specification only refers to one barcode scanner. *See* Dkt. 49 at 11 ("The specification repeatedly uses the familiar term 'barcode scanner' and explains that practically all store cash registers are equipped with barcode scanners. The figures likewise show a barcode scanner/reader connected to the cash register and used to capture both product barcodes and the User ID Barcode."). Because the claims refer to two different barcode scanners, a POSITA would lack clarity as to what these terms are

intended to encompass. *See Magnolia Med. Techs., Inc. v. Kurin, Inc.*, 169 F.4th 1094, 1102 (Fed. Cir. 2026) ("*Becton* thus stands for the proposition that when claim limitations are separately listed within a claim, that implies that the claim's plain and ordinary meaning requires separate corresponding structures."); *Joy MM Delaware, Inc. v. Cincinnati Mine Mach., Co.*, 497 F. App'x 970, 973 (Fed. Cir. 2012) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings") (internal quotations omitted). As Defendant's unrebutted expert testimony demonstrates, these terms are indefinite.

### I.  "ID Barcode"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

Antecedent basis cannot provide clarity to this term, as it is different from all other "ID" terms in the claims and in the specification. This claim limitation fails the clarity and precision demands of 35 U.S.C. § 112(b) and is thus indefinite because a POSITA would not be able to ascertain the scope of this term with reasonable certainty. *Nautilus*, 572 U.S. at 910. *See* APPX280, Dreifus Dec. ¶ 52. As noted by Defendant's expert, this claim term appears for the first and only time in the language of claim 1 itself. *See* APPX027, '689 Patent, 18:20. The Asserted Patent refers to a "User ID Barcode" in the specification over one hundred times. APPX280, Dreifus Dec. ¶ 51. Even claim 1 itself distinguishes between a "User ID Barcode," which is referenced throughout the claim, as different from the single instance where "ID Barcode" appears in step (g).

Addressing a claim similar to asserted claim 1 in this case, the Federal Circuit found that the use of "said different IP Address" was indefinite where the terms "one or more IP Addresses," "one or more second IP Addresses," or "one or more third IP Addresses" were used throughout the patent. *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020). "Further, the mismatch between the various plural IP addresses provided earlier in the claim and

10

the singular 'said different IP Address' suggests a term that is entirely untethered from the words around it." *Id*. The same is true here. "ID Barcode" is untethered from the surrounding claim language and the specification and thus renders claim 1, and all claims depending therefrom, indefinite. Plaintiff's attorney argument cannot overcome the evidence provided by Defendant's expert.

### J.  "barcode format"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "an image format that can be read by a barcode scanner" |

Plaintiff's argument makes little sense. It argues that plain and ordinary meaning suffices, yet states that a barcode format is "barcode information in the ordinary electronic form used by servers to process transaction data." Dkt. 49 at 14. This provides no clarification to the jury and ignores the disclosure of the Asserted Patent, which requires the barcode itself to be used in the purchasing process and sent between the barcode scanner, vendor server, and UVM server.

Plaintiff argues that "[t]he relevant concept is the barcode representation of the personal code, not a requirement that every later storage or transmission of the information remain an image file. The specification contemplates display on a cell phone, printing on a credit card or label, and storage/use in the transaction system." Dkt. 49 at 14. This supports Defendant's proposed construction. The barcode *itself* is used in the purported invention. It (an image) is displayed on a cell phone or printed on the back of a credit card. The barcode itself is integral to the purported invention and Plaintiff's attempt to erase this requirement from the claims should be rejected. Indeed, claim 1 expressly recites "transmitting both product *barcodes* and User ID *Barcode* to said vendor server" as opposed to reciting, for example, "transmitting both product *identifiers* and *the personal code* to said vendor server."

11

**K. "forwarding the ID Barcode and purchase price to said User Vendor Management Server"[2]**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "forwarding the ID Barcode, in an image format that can be read by a barcode scanner, and purchase price to said User Vendor Management Server" |

Once again, Plaintiff provides no citation to the Asserted Patent to support its position. Consistent with how barcodes are described in the Asserted Patent, it is both appropriate and necessary to construe forwarding a barcode as forwarding the barcode image.

The Asserted Patent also discusses "capturing" the User ID Barcode and product barcodes. APPX023, '689 Patent at 9:63-10:18 ("The product barcode 10 being purchased is captured using a Barcode Scanner Reader…The user shows the User ID Barcode as displayed in the cell phone or printed on the back of the credit card to the cashier. The cashier captures the User ID Barcode 70, using the Barcode Scanner Reader 20, step 7. The Barcode Scanner sends the User ID Barcode it captured to Cash Register 30, step 8, and the Cash Register 30 sends the transaction data which includes the vendor ID, the product description, the total purchasing amount, the User ID Barcode and others information to the Vendor Server 40, step 9. The Vendor Server 40 detected the special character in the 15 User ID Barcode indicating that the barcode does not represent any products for sale and it is the User ID Barcode, the Vendor Server 40 sends the User ID Barcode together with the transaction data to the UVM Server 80, step 10."). It is thus clear that the purported invention discloses handling and sending an actual barcode image amongst the vendor server, cash register, barcode reader, and UVM server. *See also* APPX024, '689 Patent at 11:3-28.

---

[2] In requesting construction of this term, Defendant does not waive its argument that the term "ID Barcode" is indefinite.

12

Plaintiff has failed to show otherwise, and its claim construction position should be rejected.

### L. "transmitting both product barcodes and User ID Barcode to said vendor server"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "transmitting both product barcodes and User ID Barcode to said vendor server in an image format that can be read by a barcode scanner" |

For the same reasons as above for the terms "barcode format" and "forwarding the ID Barcode and purchase price to said User Vendor Management Server," the term "transmitting both product barcodes and User ID Barcode to said vendor server" should be construed as transmitting the barcodes in image format, readable by a barcode scanner.

Plaintiff's plain and ordinary meaning construction should not be adopted, as it would allow interpretations that disregard the Asserted Patent's clear disclosure concerning use of an actual barcode by a user and the purported invention to make and process purchases.

### M. "storing said personal code in said User ID Barcode format"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "storing said personal code in an image format that can be read by a barcode scanner" |

For the same reasons as above for the terms "barcode format" and "forwarding the ID Barcode and purchase price to said User Vendor Management Server," the term "storing said personal code in said User ID Barcode format" should be construed as storing the personal code in an image format, readable by a barcode scanner.

## II.    Conclusion

For all the foregoing reasons, SEI respectfully asks this Court to adopt SEI's proposed constructions for each term discussed above.

13

DATE: May 18, 2026                    Respectfully Submitted,


/s/ Sid V. Pandit
Siddhesh V. Pandit, VA Bar No. 75,686 (admitted to practice in the NDTX)
svp@maierandmaier.com
Timothy J. Maier, VA Bar No. 46,354 (*pro hac vice*)
tjm@maierandmaier.com
Michael R. Casey, VA Bar No. 43,919 (*pro hac vice to be submitted*)
mrc@maierandmaier.com

**MAIER & MAIER PLLC**
345 South Patrick Street
Alexandria, VA 22314
(703) 740-8322 (phone)
(703) 991-7071 (fax)


Thomas J. Gohn
(TX Bar No. 24097742)
tjg@maierandmaier.com

**MAIER & MAIER PLLC**
8750 N. Central Expressway
Suite 1850
Dallas, Texas 75231
(703) 740-8322 (phone)
(703) 991-7071 (fax)

***Attorneys for Defendant 7-Eleven, Inc.***

14

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 18, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Sid V. Pandit*
Sid V. Pandit
